UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GROUP AGAINST SMOG AND POLLUTION, Inc., | ) ) ) |
| Plaintiff, | ) CIVIL ACTION NO. _____ ) |
| v. | ) JURY TRIAL DEMANDED ) |
| SHENANGO INCORPORATED, | ) ) |
| Defendant. | ) |

# COMPLAINT

PLAINTIFF GROUP AGAINST SMOG AND POLLUTION, INC. ("GASP"), by and through its undersigned attorneys, files this Complaint. In support of its Complaint, GASP makes the following averments:

1. This is a citizens' suit brought pursuant to Section 304(a)(1) of the Clean Air Act (42 U.S.C. § 7604(a)(1)) against Defendant Shenango, Incorporated ("Shenango"), seeking injunctive relief and the assessment of civil penalties for violations of emissions standards and limitations at Shenango's coke production facility located at 200 Neville Road in Neville Township, Allegheny County, Pennsylvania (the "Facility"). The violations at issue in GASP's claims have continued despite several attempts at enforcement by the federal, state, and county agencies responsible for administering the applicable air pollution laws.

## PARTIES

2. GASP is a Pennsylvania non-profit corporation whose purposes include working to promote a healthy, sustainable environment with a particular focus on improving air quality in southwestern Pennsylvania and surrounding regions.

3. GASP's membership includes individuals who live in the vicinity of the Facility, and who have been adversely affected by air pollution emitted by the Facility. *See* Declaration of Karen Grzywinski (attached as Exhibit A); Declaration of Ted Popovich (attached as Exhibit B).

4. The violations described in this Complaint expose members of GASP to harmful pollution, threaten their health and welfare, interfere with their use and enjoyment of their property and surrounding areas, injure their economic interests, and deny them the protection of their health and well-being that is guaranteed by the Clean Air Act and Article XXI of the Allegheny County Health Department's Rules and Regulations ("Article XXI" or "Art. XXI"). The relief requested herein will redress these injuries.

5. Shenango is a Pennsylvania corporation that owns and operates the Facility. The Facility is a coke manufacturing and by-products recovery plant that produces metallurgical coke, by-products, and coke oven gas.

6. Shenango is a corporate entity, and as such, is a "person" within the meaning of Section 302(e) of the Clean Air Act (42 U.S.C. § 7602(e)).

7. The Facility is a "stationary source" within the meaning of Section 7602(z) of the Clean Air Act (42 U.S.C. § 7602(z)), and a "major source" within the meaning of Section 501(2) of the Clean Air Act (42 U.S.C. § 7661(2)).

**JURISDICTION AND VENUE**

8. This Court has jurisdiction over the subject matter of this action pursuant to Section 304(a) of the Clean Air Act (42 U.S.C. § 7604(a)), 28 U.S.C. § 1331, and 28 U.S.C. § 1367.

9. By letter dated February 6, 2014, GASP gave notice of its intent to sue Shenango for the violations that are at issue in this Complaint to Shenango, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator for EPA's Region 3, the Governor of Pennsylvania, the Secretary of the Pennsylvania Department of

Environmental Protection ("DEP"), the Allegheny County Executive, and the Director of the Allegheny County Health Department ("ACHD"), pursuant to Section 304(b)(1)(A) of the Clean Air Act (42 U.S.C. § 7604(b)(1)(A)), 40 C.F.R. Part 54, and Section 2109.11.d of Article XXI. A copy of GASP's February 6, 2014 notice of intent to sue is attached hereto as Exhibit C.

10. Venue is proper in this District pursuant to Section 304(c)(1) of the Clean Air Act (42 U.S.C. § 7604(c)(1)), because the violations at issue in GASP's claims occurred at a stationary source located in this District.

## STATUTORY AND REGULATORY BACKGROUND

11. A central goal of the Clean Air Act is "to protect and enhance the quality of the Nation's air resources so as to promote the public health and welfare and the productive capacity of its population." 42 U.S.C. § 7401(b)(1).

12. To help achieve that goal, the Clean Air Act requires that EPA establish National Ambient Air Quality Standards (the "NAAQS"), which fix allowable concentrations of certain criteria pollutants in the ambient air. *See* 42 U.S.C. §§ 7408 and 7409.

13. The Clean Air Act requires that each state develop a State Implementation Plan ("SIP") that describe the measures by which it will achieve, maintain, and enforce the NAAQS. The states must submit their SIPs to EPA for its approval. *See* 42 U.S.C. § 7410.

14. EPA must approve a state's SIP if the SIP complies with requirements set forth in the Clean Air Act. *See* 42 U.S.C. § 7410(a)(2). Once approved by EPA, a SIP is enforceable as federal law. 42 U.S.C. §§ 7413; 7604(a)(1); and 7604(f).

15. ACHD has been approved as the agency responsible for enforcing laws relating to air pollution in Allegheny County. ACHD's regulations for the abatement, reduction, prevention, and control of air pollution in Allegheny County are set forth in Article XXI.

16. The purposes of Article XXI include the protection of "the health, safety and welfare of the citizens of Allegheny County." Art. XXI, § 2101.02.c.1.

17. Section 2105.21.b.1 of Article XXI limits visible emissions from the door areas of coke oven batteries. Specifically, Section 2105.21.b.1 provides:

> No person shall operate, or allow to be operated, any battery of coke ovens in such a manner that … at any time, there are visible emissions from more than five percent (5%) of the door areas of the operating coke ovens in such battery, excluding the two door areas of the last oven charged and any door areas obstructed from view.

18. Section 2105.21.f.3 of Article XXI limits visible emissions from combustion stacks serving coke oven batteries. Specifically, Section 2105.21.f.3 provides:

> No person shall operate, or allow to be operated, any battery of coke ovens in such manner that, at any time, emissions from the combustion stack serving such battery … [e]qual or exceed an opacity of 20% for a period or periods aggregating in excess of three (3) minutes in any 60 minute period.

19. Section 2105.21.f.4 of Article XXI limits visible emissions from combustion stacks serving coke oven batteries. Specifically, Section 2105.21.f.4 provides:

> No person shall operate, or allow to be operated, any battery of coke ovens in such manner that, at any time, emissions from the combustion stack serving such battery … [e]qual or exceed an opacity of 60% at any time.

20. Section 2105.21.h.3 of Article XXI limits the concentration of sulfur compounds, measured as hydrogen sulfide, in coke oven gas that is flared, mixed, or combusted at the Facility. Specifically, Section 2105.21.h.3 provides:

> no person shall flare, mix, or combust coke oven gas, or allow such gas to be flared, mixed, or combusted, unless the concentration of sulfur compounds, measured as hydrogen sulfide, in such gas is less than or equal to … a concentration of 34 grains per hundred dry cubic feet of coke oven gas.

21. Sections 2105.21.b.1, 2105.21.f.3, 2105.21.f.4, and 2105.21.h.3 of Article XXI have been approved by EPA and incorporated into the State Implementation Plan that Pennsylvania adopted pursuant to Section 110(a) of the Clean Air Act (42 U.S.C. § 7410(a)). *See* 40 C.F.R. § 52.2020(c)(2).

22. ACHD has adopted an operating permits program for major sources in Allegheny County pursuant to Title V of the Clean Air Act (42 U.S.C. §§ 7661 – 7661f). That program is

codified in Sections 2103.01 – 2103.20 of Article XXI and has been approved by EPA.  *See* 40 C.F.R. Part 70, App. A ("Pennsylvania").

23. At all times relevant to the claims in this Complaint, the Facility's operations have been subject to a Major Source Title V Operating Permit issued by ACHD pursuant to Article XXI.  Since May 22, 2013, the Facility's operations have been subject to ACHD Permit # 0025a.  From March 21, 2006, through May 21, 2013, the Facility's operations were subject to ACHD Permit # 0025.

24. Article XXI, Section 2105.21.b.1's limitations on visible emissions from the door areas of coke oven batteries are incorporated into ACHD Permit # 0025 at § V.A.1.l and ACHD Permit # 0025a at § V.A.1.k.

25. Article XXI, Section 2105.21.f.3's limitations on visible emissions from combustion stacks serving coke oven batteries are incorporated into ACHD Permit # 0025 at § V.A.1.u and ACHD Permit # 0025a at § V.A.1.t.

26. Article XXI, Section 2105.21.f.4's limitations on visible emissions from combustion stacks serving coke oven batteries are incorporated into ACHD Permit # 0025 at § V.A.1.v and ACHD Permit # 0025 at § V.A.1.u.

27. Article XXI, Section 2105.21.h.3's limitations on the concentration of sulfur compounds (measured as hydrogen sulfide) in coke oven gas that is flared, mixed, or combusted at the Facility are incorporated into Operating Permit # 0025 at §§ V.A.1.j and V.E.1.a and Operating Permit # 0025a at §§ V.A.1.i and V.E.1.a.

28. It is a violation of Article XXI for any person "to fail to comply with, or to cause or assist in the violation of, any requirement of [Article XXI], or any permit issued pursuant to authority granted by [Article XXI]," Art. XXI, § 2101.11.a, to "[o]perate, or allow to be operated, any source in such manner as to allow the release of air contaminants into the open air, or to cause air pollution as defined in [Article XXI], except as explicitly permitted by [Article XXI]," Art. XXI, § 2101.11.b.1, or "to cause a public nuisance or to cause air, soil, or water pollution resulting from any air pollution emission," Art. XXI, § 2101.11.c.

29. Section 2101.11 of Article XXI has been incorporated into the State Implementation Plan for Pennsylvania.  *See* 40 C.F.R. § 52.2020(c)(2).

30. Any violation of any requirement of Article XXI, including a violation of a requirement of an operating permit issued pursuant to Article XXI, constitutes a nuisance, Art. XXI, § 2101.13, that is "abatable in the manner provided by law or equity for the abatement of a public nuisance," Art. XXI, § 2109.11.a.

31. Section 2101.13 of Article XXI has been incorporated into the State Implementation Plan for Pennsylvania.  *See* 40 C.F.R. § 52.2020(c)(2).

## FACTUAL BACKGROUND

32. On or about June 19, 2012, ACHD and Shenango entered into a Consent Order and Agreement (the "2012 COA") which (among other things) incorporated the limitation on the sulfur concentration of coke oven gas that is flared or combusted at the Facility from Section 2105.21.h.3 of Article XXI.  *See* 2012 COA, ¶ V.B.  A copy of the 2012 COA, without exhibits, is attached hereto as Exhibit D.

33. On or about July 24, 2012, the United States of America, the Pennsylvania Department of Environmental Protection ("DEP"), Allegheny County, and Shenango executed a consent decree that addressed violations by Shenango of various laws concerning air and water pollution (the "2012 Consent Decree").  The 2012 Consent Decree was entered by the United States District Court for the Western District of Pennsylvania on or about November 6, 2012 under Civil Action No. 12-cv-01029-GLL.  A copy of relevant portions of the 2012 Consent Decree, without exhibits, is attached hereto as Exhibit E.

34. The 2012 Consent Decree incorporated the limits on visible emissions from combustion stacks for coke oven batteries from Article XXI, Sections 2105.21.f.3 and 2105.21.f.4, and purported to require that Shenango operate the Facility in compliance with those limits.  2012 Consent Decree, ¶ IV.A.1.

35. GASP's February 6, 2014 notice of intent to sue was based on Shenango's repeated violations of certain provisions of its Operating Permits and Article XXI between July 26, 2012 and September 30, 2013.  Specifically, GASP identified repeated violations by Shenango of the following limitations in the Facility's Operating Permits and Article XXI:

    a. limitations on the aggregate of visible charging emissions;

    b. limitations on visible emissions from the Facility's coke oven door areas;

    c. limitations on visible pushing emissions and visible emissions from the Facility's pushing control device outlet;

    d. limitations on visible emissions from the Facility's coke oven battery's combustion stacks; and

    e. limitations on the sulfur content of flared, mixed, or combusted coke oven gas.

36. On April 7, 2014, Allegheny County commenced an enforcement Action against Shenango in the Civil Division of the Court of Common Pleas of Allegheny County, Pennsylvania, under General Docket No. 14-006299.  Allegheny County's Complaint in that Action sought relief from Shenango based on some, but not all, of the categories of violations that were identified by GASP in its February 6, 2014 notice of intent to sue.  Specifically, Allegheny County's Complaint did not seek relief for repeated, continuing violations by Shenango of applicable limitations on visible emissions from the combustion stack for the Facility's coke oven battery.  A copy of the Complaint in G.D. No. 14-006299 is attached hereto as Exhibit F.

37. Also on April 7, 2014 Allegheny County and Shenango presented the Allegheny County Court of Common Pleas with a Joint Motion to Enter Consent Order and Agreement, which the Court signed, thereby entering a Consent Order and Agreement (the "2014 COA") as a final judgment.  A copy of the 2014 COA is attached hereto as Exhibit G.  The 2014 COA purports to settle the claims that Allegheny County made against Shenango in its Complaint in G.D. No. 14-006299 in exchange for Shenango's promise to pay a $300,000 civil penalty, 2014

COA, ¶ V.A, undertake an engineering study, *id.*, ¶ VI, and implement certain measures aimed at reducing the types of air pollution violations that were the basis of Allegheny County's claims in that action. 2014 COA, ¶ IV.

38. The 2014 COA does not require Shenango to comply with the applicable limitation on visible emissions from the Facility's coke oven door areas. Further, the 2014 COA does not require that Shenango implement any new measures to control visible emissions from the Facility's coke oven door areas. Rather, the 2014 COA states that certain "steps have been taken by Shenango to enhance the control of charging, soaking, and coke oven door emissions." 2014 COA, ¶ 18.

39. The 2014 COA does not specify when Shenango took such steps. *See id.*

40. Any "steps [that] have been taken by Shenango" to control visible emissions from the coke oven door areas have failed to ensure Shenango's compliance with the applicable limitation on such emissions. From July 26, 2012 through September 30, 2013, Shenango violated that limitation at least one time on each of thirty-nine separate days.

41. Shenango has violated the applicable limitation on visible emissions from the coke oven door areas on an intermittent basis since September 30, 2013.

42. Shenango's violations of the applicable limitations on visible emissions from the coke oven door areas are likely to recur because the "steps" that Shenango purportedly took to control such emissions before the 2014 COA failed to ensure Shenango's compliance with the applicable limitation, and because the 2014 COA did not require Shenango to undertake any new measures to control such emissions.

43. The 2014 COA does not require Shenango to comply with applicable limits on visible emissions from the combustion stack for the Facility's battery of coke ovens nor to implement any new measures or technologies to control such emissions. Rather, the 2014 COA states that Shenango's "[c]ompliance with requirements pertaining to emissions from the Facility's battery combustion stack are covered by the 2012 Consent Decree that remains in full force and effect." 2014 COA, ¶ 20.

44. Any measures that Shenango was required to undertake pursuant to the 2012 Consent Decree to control visible emissions from the combustion stack for the Facility's battery of coke ovens failed to ensure Shenango's compliance with the applicable limitations on such emissions. From July 26, 2012 through September 30, 2013, Shenango violated those limitations at least one time on each of 264 separate days.

45. Shenango has violated the applicable limitations on visible emissions from the combustion stack for the Facility's battery of coke ovens on an intermittent basis since September 30, 2013.

46. Shenango's violations of the applicable limitations on visible emissions from the combustion stack for the Facility's battery of coke ovens are likely to recur because the measures required by the 2012 Consent Decree failed to ensure Shenango's compliance with applicable limitations on visible emissions from the combustion stack for the Facility's coke oven battery, and because the 2014 COA did not require Shenango to undertake any new measures to control such emissions.

47. The 2014 COA does not require Shenango to comply with applicable limits on the concentration of sulfur compounds (measured as hydrogen sulfide) in coke oven gas that is flared, mixed, or combusted at the Facility nor to implement any new measures or technologies to limit the concentration of sulfur compounds (measured as hydrogen sulfide), in coke oven gas that is flared, mixed, or combusted at the Facility. Rather, the 2014 COA states that Shenango's "[c]ompliance with requirements pertaining to emissions from the Facility's battery combustion stack are covered by the 2012 COA that remains in full force and effect." 2014 COA, ¶ 19.

48. Any measures that Shenango was required to undertake pursuant to the 2012 COA to limit the concentration of sulfur compounds (measured as hydrogen sulfide), in coke oven gas that is flared, mixed, or combusted at the Facility failed to ensure Shenango's compliance with the applicable limitation on the concentration of sulfur compounds in coke oven gas that is flared, mixed, or combusted at the Facility. From July 26, 2012 through September 30, 2013, Shenango violated the applicable limitation on the concentration of sulfur compounds

9

in coke oven gas that was flared, mixed, or combusted at the Facility at least one time on each of twelve separate days.

49. Shenango has violated the applicable limitation on the concentration of sulfur compounds (measured as hydrogen sulfide), in coke oven gas that is flared, mixed, or combusted at the Facility on an intermittent basis since September 30, 2013.

50. Shenango's violations of the applicable limitation on the concentration of sulfur compounds (measured as hydrogen sulfide), in coke oven gas that is flared, mixed, or combusted at the Facility are likely to recur because the measures required by the 2012 COA failed to ensure Shenango's compliance with that limitation, and because the 2014 COA did not require Shenango to undertake any new measures to limit the concentration of sulfur compounds in coke oven gas that was flared, mixed, or combusted at the Facility.

51. More than 60 days have passed since GASP gave notice of its intent to sue and neither EPA, nor DEP, nor ACHD has commenced and is diligently prosecuting an action in court to redress the violations that are the subject of this Complaint.  As described in Paragraphs 36 to 50 of this Complaint, all enforcement actions commenced by EPA, DEP, and/or ACHD concerning such violations have concluded, but the violations at issue in GASP's claims have continued to occur.

**COUNT I**

**<u>Violations of Limitations on Visible Emissions from Door Areas of Coke Oven Batteries</u>**

52. The averments of paragraphs 1 through 51 above are incorporated by reference as if fully restated herein.

53. Since November 6, 2012, Shenango has repeatedly violated the limitation in Section 2105.21.b.1 of Article XXI, section V.A.1.l of ACHD Permit # 0025, and section V.A.1.k of ACHD Permit # 0025a on visible emissions from door areas of coke oven batteries. Shenango's violations of that limitation are continuing and are likely to recur.

54.	Such violations are violations of "emissions standards and limitations" under section 304 of the Clean Air Act (42 U.S.C. § 7604), and violations of Article XXI under section 2101.11 of Article XXI.

55.	Shenango's continued violations of the applicable limitation on visible emissions from the Facility's coke oven door areas also constitute a public nuisance that adversely affects members of GASP and other members of the general public.  *See* Art. XXI, § 2101.13.

WHEREFORE, GASP respectfully requests that this Court:

a.	Declare that Shenango has violated and continues to violate the applicable limitation on visible emissions from the Facility's coke oven door areas;

b.	Enter an order enjoining Shenango from further violations of that limitation;

c.	Require Shenango to pay civil penalties for its violations;

d.	Award GASP its costs and reasonable attorneys' and expert witness' fees;

e.	Retain jurisdiction over this action to ensure that Shenango complies with the Court's order; and

f.	Grant such other relief as the Court deems just and proper.

## COUNT II

### Violations of Limitations on Visible Emissions from a Coke Oven Battery's Combustion Stack

56.	The averments of Paragraphs 1 through 55 above are incorporated by reference as if fully restated herein.

57.	Since November 6, 2012, Shenango has repeatedly violated the limitation in Section 2105.21.f.3 of Article XXI, section V.A.1.u of ACHD Permit # 0025, and section V.A.1.t of ACHD Permit # 0025a on visible emissions from combustion stacks serving coke oven batteries.  Shenango's violations of that limitation are continuing and are likely to recur.

58.	Since November 6, 2012, Shenango has repeatedly violated the limitation in Section 2105.21.f.4 of Article XXI, section V.A.1.v of ACHD Permit # 0025, and section

V.A.1.u of ACHD Permit # 0025a on visible emissions from combustion stacks serving coke oven batteries.  Shenango's violations of that limitation are continuing

59. Such violations are violations of "emissions standards and limitations" under section 304 of the Clean Air Act (42 U.S.C. § 7604), and violations of Article XXI under section 2101.11 of Article XXI.

60. Shenango's continued violations of applicable limitations on visible emissions from the combustion stack serving the Facility's coke oven batteries constitute a public nuisance that adversely affects members of GASP and other members of the general public.  *See* Art. XXI, § 2101.13.

WHEREFORE, GASP respectfully requests that this Court:

a. Declare that Shenango has violated and continues to violate applicable limitations on visible emissions from the combustion stack serving the Facility's coke oven battery;

b. Enter an order enjoining Shenango from further violations of such limitations;

c. Require Shenango to pay civil penalties for its violations;

d. Award GASP its costs and reasonable attorneys' and expert witness' fees;

e. Retain jurisdiction over this action to ensure that Shenango complies with the Court's order; and

f. Grant such other relief as the Court deems just and proper.

## COUNT III

### Violations of Limitations on the Sulfur Content of the Facility's Flared, Mixed, or Combusted Coke Oven Gas

61. The averments of Paragraphs 1 through 60 are incorporated by reference as if fully restated herein.

62. Since November 6, 2012, Shenango has repeatedly violated the limitation in Section 2105.21.h.3 of Article XXI, sections V.A.1.j and V.E.1.a of ACHD Permit # 0025, and sections V.A.1.i and V.E.1.a of ACHD Permit # 0025a on the sulfur content of coke oven gas

that is flared, mixed, or combusted at the Facility.  Shenango's violations of that limitation are continuing and are likely to recur.

63. Such violations are violations of "emissions standards and limitations" under section 304 of the Clean Air Act (42 U.S.C. § 7604), and violations of Article XXI under section 2101.11 of Article XXI.

64. Shenango's continued violations of the applicable limitation on the sulfur content of flared, mixed, or combusted coke oven gas from the Facility's battery of coke ovens constitute a public nuisance that adversely affects members of GASP and other members of the general public.  Art. XXI, § 2101.13.

WHEREFORE, GASP respectfully requests that this Court:

a. Declare that Shenango has violated and continues to violate the applicable limitation on the sulfur content of flared, mixed, or combusted coke oven gas from the Facility's battery of coke ovens;

b. Enter an order enjoining Shenango from further violations of that limitation;

c. Require Shenango to pay civil penalties for its violations;

d. Award GASP its costs and reasonable attorneys' and expert witness' fees;

e. Retain jurisdiction over this action to ensure that Shenango complies with the Court's order; and

f. Grant such other relief as the Court deems just and proper.

        GROUP AGAINST SMOG AND
        POLLUTION, INC.


        s/ John K. Baillie
        _____
        John K. Baillie, Esq.
        PA ID # 66903
        john@gasp-pgh.org
        Joseph Osborne, Esq.
        PA ID # 210024
        joe@gasp-pgh.org

        Group Against Smog and Pollution, Inc.
        5135 Penn Avenue
        Pittsburgh, PA  15224
        Phone:    412-924-0604
        Fax:      412-924-0606

        Attorneys for Plaintiff Group Against Smog and Pollution, Inc.