**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| GROUP AGAINST SMOG AND POLLUTION, INC., | ) | Civil Action No. 2:14-cv-00595-CB |
| | ) | |
| Plaintiff, | ) | HONORABLE CATHY BISSOON, |
| | ) | DISTRICT JUDGE |
| v. | ) | |
| | ) | |
| SHENANGO INCORPORATED, | ) | |
| | ) | *ELECTRONICALLY FILED* |
| Defendant. | ) | |
| | ) | |

## DEFENDANT SHENANGO INCORPORATED'S BRIEF IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT PURSUANT TO RULES 12(b)(1) and (b)(6)

Defendant Shenango Incorporated ("Shenango"), by and through its counsel, files this Brief in Support of Motion to Dismiss the First Amended Complaint ("Amended Complaint") filed by the Plaintiff, Group Against Smog and Pollution, Inc. ("GASP") for lack of subject-matter jurisdiction, pursuant to Federal Rule of Civil Procedure 12(b)(1), and for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I.     INTRODUCTION

GASP has instituted this citizen suit against Shenango under Section 304 of the Clean Air Act ("CAA"), 42 U.S.C. § 7604, seeking declaratory judgment, injunctive relief, and civil penalties for alleged exceedances of three emissions standards within Article XXI, Section 2015.21 of the Allegheny County Health Department ("ACHD") Rules and Regulations. These exceedances are already being addressed and diligently prosecuted by county, state, and federal agencies through civil actions previously filed in 2014 by ACHD within the Allegheny County Court of Common Pleas, *Allegheny County v. Shenango, Inc.*, Case No. GD-14-6299 (Pa.

C.C.P. 2014), and in 2012 by the ACHD, the Pennsylvania Department of Environmental Protection ("DEP"), and United States Environmental Protection Agency ("EPA") in this court, *United States et al v. Shenango, Inc.*, Case No. 12-1029 (W.D. Pa. 2012).

Section 304(b)(1)(B) of the CAA jurisdictionally bars a citizen suit from proceeding if an agency has commenced and is diligently prosecuting an enforcement action addressing the same violations alleged in the citizen suit. The above-described civil actions undoubtedly address the same emissions standards alleged by GASP's Amended Complaint. Moreover, each of these civil actions have been and continue to be diligently prosecuted through an April 8, 2014 consent order and agreement ("2014 COA") and a November 6, 2012 consent decree ("2012 Consent Decree"), especially in light of the well-established principle that diligence is presumed on the part of the agency and that great deference is afforded to agencies to use discretion in their enforcement strategy. A copy of the 2014 COA is attached to GASP's Amended Complaint as Exhibit "F". Relevant portions of the 2012 Consent Decree are attached hereto as Exhibit "1".[1] Finally, GASP's Amended Complaint fails to allege any facts that indicate dilatory, collusive or bad faith conduct on the part of the ACHD, DEP, or EPA in enforcing the relevant emission standards against Shenango. Accordingly, Shenango requests that the Court dismiss all of the claims presented in GASP's Amended Complaint with prejudice.

## II.      BACKGROUND

### A.      Statutory and Regulatory Background

The regulatory framework of the CAA follows a unique approach grounded in cooperative federalism, recognizing that "air pollution prevention...and control at its source is

---

[1] Because the partial copy of the 2012 Consent Decree attached as Exhibit "D" in GASP's Amended Complaint does not include several relevant sections, it is necessary to attach a separate copy with the portions that Shenango deems relevant as an exhibit to this brief.

the primary responsibility of the States and local governments."  42 U.S.C. § 7401(a)(3).  To this

end, the CAA requires the EPA to develop National Ambient Air Quality Standards ("NAAQS")

that set concentration limits for specific "criteria" pollutants.  42 U.S.C. § 7408.  In turn, each

state is required to develop and submit for approval a State Implementation Plan ("SIP") that

details the state's strategy for achieving or maintaining achievement of the NAAQS, including

"enforceable emission limitations" necessary to meet the requirements of the CAA.  42 U.S.C. §

7410(a)(2)(A).  Upon approval by the EPA, the terms of the SIP become enforceable standards

under federal law.  42 U.S.C. § 7413.  Pursuant to SIPs within some states, various local

agencies have been delegated regulatory authority over the CAA.  The ACHD has been

authorized to regulate air quality within Allegheny County through administration of its

approved portion of the Pennsylvania SIP, which contains enforceable emissions standards at

Article XXI of the ACHD Rules and Regulations.

Although states or, where authorized, local agencies carry primary enforcement authority

over its emissions standards, the CAA also recognizes a limited role for citizens to play in the

enforcement process.  CAA Section 304(a), 42 U.S.C. § 7604, states that "any person may

commence a civil action . . . against any person . . . who is alleged to have violated (if there is

evidence that the alleged violation has been repeated) or to be in violation of [an] emission

standard," provided that the suit is filed at least 60 days after initially providing notice of the

intent to sue to the prospective defendant.  This provision grants federal district courts

jurisdiction to hear such citizen suits. One of the main purposes behind the citizen suit provision

is to allow citizens opportunity to induce governmental enforcement.  *Baughman v. Bradford*

*Coal Co*., 592 F.2d 215, 219 (3d Cir. 1979) ("Congress intended citizen suits to both goad the

responsible agencies to more vigorous enforcement…and, if the agencies remained inert, to provide an alternate enforcement mechanism").

An express acknowledgment of this congressional intent is found at 42 U.S.C. § 7604(b)(1)(B), which states that no citizen suit "may be commenced…if the Administrator or State has commenced and is diligently prosecuting a civil action in a court of the United States or a State to require compliance with the standard, limitation, or order…"  This provision recognizes the need for enforcement when agencies remain stagnant, but simultaneously aims to prevent parallel and duplicative citizen suits which may frustrate bona fide agency enforcement efforts.

**B.      Factual Background**

Shenango operates the Neville Island Coke Plant ("Facility"), a coke manufacturing and byproducts recovery plant that produces metallurgical coke, by-products and coke oven gas.  The Facility includes the S-1 coke battery comprised of 56 ovens, as well as other units that support the by-product recovery process.

On July 24, 2012, EPA, DEP, and ACHD filed a complaint in the US District Court for the Western District of Pennsylvania against Shenango (the "2012 Complaint").  A copy of the 2012 Complaint is attached hereto as Exhibit "2".  In its second and sixth claims for relief, the 2012 Complaint alleged violations of the following emissions standards contained in Article XXI of the ACHD Rules and Regulations: (1) visible emissions from more than five percent of the door areas of coke ovens, contrary to Section 2105.21.b.1 (the "5 percent door emissions standard"), (2) combustion stack emissions with opacity greater than 20 percent for three minutes over a 60 minute period contrary to Section 2105.21.f.3 (the "20 percent combustion stack opacity standard"), and (3) combustion stack emissions with opacity greater than 60 percent

contrary to Section 2105.21.f.4 (the "60 percent combustion stack opacity standard"). Copies of these regulatory provisions are attached hereto as Exhibit "5". The 2012 Complaint also requested injunctive relief and civil penalties (Ex. 2 ¶¶ A, D).

On July 25, 2012, Shenango entered into the 2012 Consent Decree with EPA, DEP, and ACHD to settle the allegations raised in the 2012 Complaint (Ex. 1 ¶ XVI.A). The 2012 Consent Decree, which remains effective to this day, reiterates the allegations in the 2012 Complaint and assessed $1.75 million in civil penalties (Ex. 1 ¶ VII.A). In addition, it requires Shenango to continuously implement various protocols as ongoing corrective measures to address the 20 and 60 percent combustion stack opacity standards, and specifies a schedule of stipulated penalties in the event of future non-compliance (Ex. 1 ¶¶ IV.A.1-3). In that regard, ACHD and EPA issued a stipulated penalty demand on April 8, 2014 in the amount of $148,500 for violations of the 20 and 60 percent combustion stack opacity standards occurring between the entry date of the 2012 Consent Decree and December 31, 2013, which Shenango promptly paid. Pursuant to the 2012 Consent Decree, ACHD and EPA also issued a stipulated penalty demand on July 3, 2014 in the amount of $28,350 for alleged violations of the 20 percent and 60 percent combustion stack opacity standards at the Facility. *See* page 1 of the April 8, 2014 and July 3, 2014 Stipulated Penalty Demands, copies of which are attached hereto as Exhibit "3".

On February 6, 2014, GASP sent a letter informing Shenango of its intent to sue for alleged violations of several emissions standards within Article XXI, Section 2015.21 of the ACHD Rules and Regulations ("Notice of Intent to Sue"). A copy of the Notice of Intent to Sue is attached in GASP's Amended Complaint as Exhibit "C". Shenango and the ACHD were already involved in discussions regarding the issues raised in the Notice of Intent to Sue. The ACHD had also conducted frequent inspections and received summaries of daily inspections by

third-party inspectors to determine compliance with the 5 percent door emissions standard.  A copy of an affidavit by the ACHD Air Quality Division Enforcement Chief attesting to the frequency and results of these inspections is attached hereto as Exhibit "4".

On April 7, 2014, the ACHD filed a complaint with the Allegheny County Court of Common Pleas (the "2014 Complaint"), alleging violations of the 5 percent door emissions standard during the same period raised in GASP's notice of intent to sue letter, and seeking both civil penalties and injunctive relief enjoining Shenango from future violations.  *See* paragraphs 28 - 33 of the 2014 Complaint, a copy of which is attached to GASP's Amended Complaint as Exhibit "E".  On the same day, the ACHD filed the 2014 COA which, among other things, assessed civil penalties for the violations alleged in the 2014 Complaint, recognized corrective actions taken by Shenango prior to entry of the 2014 COA, and expressly referenced the 2012 Consent Decree to reaffirm its continuous prosecution of the 20 and 60 percent combustion stack opacity standards (Amended Complaint, Ex. F ¶ 20).

On May 8, 2014, GASP commenced this action, seeking declaratory and injunctive relief, as well as civil penalties, for Shenango's alleged violations of four of the same emissions standards addressed by the 2014 COA and 2012 Consent Decree.  On July 7, 2014, GASP filed its Amended Complaint, which withdrew allegations of violations of the flared coke oven gas standard at Article XXI, Section 2105.21.h3 of the ACHD Rules and Regulations, and alleges violations of three of the same emissions standards addressed by the 2014 COA and the 2012 Consent Decree, i.e. the 5 percent door emissions standard, and the 20 and 60 percent combustion stack opacity standards.

### III.    STANDARD OF REVIEW

Shenango seeks dismissal of GASP's Amended Complaint and lawsuit under Rule 12(b)(1) and (b)(6).

A case must be dismissed for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) when the court lacks the statutory or constitutional power to adjudicate the controversy. *Robinson v. Dalton*, 107 F.3d 1018, 1021 (3d Cir.1997) ("at issue in a 12(b)(1) motion is the trial court's jurisdiction—its very power to hear the case").   The plaintiff "has the burden of persuasion to convince the court it has jurisdiction," *Gould Elecs., Inc., v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), and must establish jurisdiction by a preponderance of the evidence. *Doe v. Goldstein's Deli*, 82 Fed. Appx. 773, 775 (3d Cir. 2003).

A Rule 12(b)(1) motion may present either facial or factual challenges to subject matter jurisdiction.  In considering motions presenting factual challenges, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims."  *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).  Therefore, to evaluate jurisdictional claims, the court may consider evidence beyond the pleadings, including "affidavits, depositions, and testimony to resolve factual issues bearing on jurisdiction."  *Gotha v. United States*, 115 F.3d 176, 179 (3d Cir. 1997).  At a minimum, the plaintiff's factual assertions must be sufficient to set forth a "plausible" claim and "raise a right to relief above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 556 (2007).

Under Rule 12(b)(6), when deciding whether to dismiss complaint failure to state a claim, all factual allegations are accepted as true and all reasonable inferences are construed in the light most favorable to the plaintiff.  *Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).

However, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Further, "in resolving a Rule 12(b)(6) motion to dismiss, a court may properly look beyond the complaint to matters of public record including court files, records and letters of official actions or decisions of government agencies and administrative bodies, documents referenced and incorporated in the complaint and documents referenced in the complaint or essential to a plaintiff's claim which are attached to a defendant's motion." *Arizmendi v. Lawson*, 914 F. Supp. 1157, 1160-61 (E.D. Pa. 1996) (citations omitted).

## IV. ARGUMENT

**A.     GASP's Amended Complaint must be dismissed for lack of jurisdiction because federal, state and county authorities are already diligently prosecuting violations of the same emissions standards.**

GASP's Amended Complaint involves the same emission standards and alleged violations that are the subject of civil actions filed by the ACHD, EPA, and DEP against Shenango seeking compliance with the emissions standards.  Further, each of these enforcement actions have resulted in the execution of the 2014 COA and the 2012 Consent Decree that remain in full force and address these standards by imposing substantial fines and requiring long-term, ongoing corrective action with the ultimate goal of compliance.  Therefore, such actions properly constitute a diligent prosecution of a civil action under CAA Section 304(b)(1)(B), which requires dismissal of the plaintiff's suit pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction.

Under CAA Section 304(b)(1)(B), a federal court lacks jurisdiction to hear a CAA citizen suit if a "State has commenced and is diligently prosecuting a civil action in a Court of the United States or a State to require compliance with the standard, limitation, or order" that is the

subject of the citizen suit.  42 U.S.C. § 7604(b)(1)(B).  The congressional intent of this provision is to prevent duplicative actions, recognizing that "wholly redundant" suits may overburden courts and that "citizen suits [are] to play an interstitial rather than potentially intrusive role" with respect to an agency's enforcement efforts.  *Glazer v. American Ecology Envtl. Servs. Corp.*, 894 F.Supp. 1029, 1034 (E.D. Tex. 1995), *Maryland Waste Coalition v. SCM Corp.*, 616 F.Supp. 1474, 1482-1483 (D. Md. 1985).  Put another way, the citizen suit provision "was not intended to enable citizens to commandeer the federal enforcement machinery," *United States EPA v. Green Forest*, 921 F.2d 1394, 1402 (8th Cir. 1990); instead, "it is [the overseeing government agency], not the citizens, who is principally responsible for enforcing the law." *Clean Air Council v. Sunoco, Inc*., 2003 U.S. Dist. LEXIS 5346, *9 (D. Del. 2003).  A copy of this decision is attached hereto as Exhibit "6".  Therefore, citizen suits that effectively "supplant" government action are soundly within the ambit of preclusion under CAA Section 304(b)(1)(B). *Gwaltney of Smithfield v. Chesapeake Bay Found.*, 484 U.S. 49, 61 (1987).

The Court must employ a two-step inquiry to determine if a citizen suit is precluded by Section 304(b)(1)(B).  The first step involves assessing whether the same "standard, limitation, or order" in the prior state action is also at issue in the citizen suit.  In determining this first prong, the Court must compare the pleadings filed by the agency to those filed by the plaintiff-citizen group.  *Dodge v. Mirant Mid-Atlantic*, LLC, 732 F.Supp.2d 578, 587 (D. Md. 2010), *Glazer*, 894 F.Supp. at 1035, *Conn. Fund for the Envt.v. Contract Plating Co*., 631 F.Supp. 1291, 1293 (D. Conn. 1986).  If the government agency's complaint and the plaintiff's complaint both allege violations of the same emissions standard, a federal court lacks jurisdiction to hear a claim regarding that standard if the agency's action was diligently prosecuted.  *Id*.  Further, if other materials such as consent orders or decrees are submitted as part of an agency's civil

action, such documents are also examined against the plaintiff's complaint to determine the scope of the government's enforcement action.  See, e.g., *Dodge*, 732 F.Supp.2d at 587 (court reviewed and considered the consent decree when comparing the government and citizen actions because of its "special relevance" when filed "simultaneously with the complaint").

The second step of the court's analysis requires the determination of whether the action was diligently prosecuted by the government agency.  See *Conn. Fund*, 631 F. Supp. at 1293, *Glazer*, 894 F.Supp. at 1035.

There is a "heavy presumption" that the agency's prosecution of a defendant is diligent. *Envtl. Integrity Project v. Mirant Corp*., 2007 U.S. Dist. LEXIS 1219, *3 (D. Md. 2007), a copy of which is attached hereto at Exhibit 6.   See also *Clean Air Council* 2003 U.S. Dist. LEXIS 5346 at *3, *Conn. Fund for the Envt*., 631 F. Supp. at 1293.  Moreover, in order to overcome this strong presumption, the plaintiff bears the difficult burden of proving "that the [state, authorized local agency, or EPA] has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith."  *Envtl. Integrity Project*, 2007 U.S. Dist. LEXIS 1219 at *3.

The framework of this analysis evidences the "great deference" that federal courts afford to government agencies to exercise discretion in enforcing CAA standards in a manner that the agencies deem is in the "best interest of all parties involved."  *Ark. Wildlife Federation v. ICI Americas, Inc.,* 842 F.Supp. 1140, 1147 (E.D. Ark. 1993); *Clean Air Council*, 2003 U.S. Dist. LEXIS 5346 at **8-9.  As a result of this deference to an agency's exercise of discretion, citizen suits that amount to nothing more than a disagreement with the sufficiency or stringency of a government agency's settlement with a defendant fail to overcome the heavy presumption of diligent prosecution.  *Gwaltney of Smithfield,* 484 U.S. at 60.  As the Supreme Court explained,

"if citizens could file suit . . . in order to seek civil penalties that the [government agency] chose to forego, then the [agency's] discretion to enforce [a statute] in the public interest would be curtailed considerably."  *Id.*; *see also Clean Air Council*, 2003 U.S. Dist. LEXIS 5346 at **8-9 ("Settling with a violator is within a government agency's discretion, even if citizens might have preferred more stringent terms than those determined by the government to be appropriate.").

In accordance with the great deference afforded to enforcement agencies, courts have regularly held that an enforcement action is diligently prosecuted even when it is resolved through a consent decree or order that does not require immediate compliance with the emissions standard at issue.  See *Clean Air Council*, 2003 U.S. Dist. LEXIS 1219 at *19 (holding that a four year delay in requiring compliance with a CAA standard nonetheless evidenced a diligent prosecution), *Citizens for Clean Power v. Indian River Power*, LLC, 636 F.Supp.2d 351, 358 (D. Del. 2009) (holding that "despite the fact that the [consent order] was not specifically engineered to cure defendant's [CAA] violations," it nonetheless represented a diligent prosecution), *Dodge*, 732 F.Supp.2d at 587 (finding a diligent prosecution by an agency even where a consent decree did "not specifically mandate compliance with" an emissions standard at issue).

Instead, a parallel citizen suit may proceed in the face of a State's enforcement efforts only when the enforcement is deemed "totally unsatisfactory," failing to seek the goal of compliance with the CAA in any manner.  *Clean Air Council*, 2003 U.S. Dist. LEXIS 5346 at *17, *Hudson River Sloop Clearwater v. Conrail*, 591 F.Supp. 345, 351 (N.D.N.Y 1984), *rev'd on other grounds*, 768 F.2d 57 (2d Cir. 1985).  In general, "a consent order should be viewed as sufficient in itself to satisfy the requirement of diligent prosecution."  *Sierra Club v. SCM Corp.*, 572 F. Supp. 828, 831 n.3 (W.D.N.Y. 1983).

Here, GASP's Amended Complaint can be characterized only as a mere disagreement with the sufficiency of the 2014 COA and 2012 Consent Decree.  As discussed in detail below, dismissal of GASP's Amended Complaint with prejudice is required because it alleges violations of the same emission standards that are already the subject of enforcement actions that have been and continue to be diligently prosecuted by the ACHD, DEP, and EPA.

1.      **The ACHD's 2014 Complaint and COA constitute a diligent prosecution of the coke oven door emissions standard alleged in Count I of GASP's Amended Complaint.**

In Count I of its Amended Complaint, GASP alleges that Shenango violated the 5 percent door emissions standard in Article XXI, Section 2105.21.b.1 of the ACHD Rules and Regulations (Amended Complaint, ¶ 45-46).   GASP contends in its Amended Complaint that the ACHD's 2014 civil action against Shenango did not seek relief with respect to alleged violations of this emission standard (Amended Complaint ¶¶ 36, 38), but this is plainly untrue.

In Count II of the 2014 Complaint filed in the Allegheny County Court of Common Pleas on April 7, 2014, the ACHD alleged several instances where visible emissions exceeded the 5 percent door emissions standard at Shenango's S-1 Battery, in violation of Article XXI, Section 2105.21.b.1 of the ACHD Rules and Regulations (Amended Complaint, Ex. E ¶¶ 27-33).   In addition, in the 2014 COA, the ACHD alleged that between 2012 and the first quarter of 2014, Shenango was responsible for "excess visible emissions from the door areas of Battery S-1 in violation of Section 2105.21.b.1" (Amended Complaint, Ex. F ¶¶ 8.b, 9, 10.b, 11, 12.b, 14.b, 15.b, 16.a).  These references to the 5 percent door emissions standard unequivocally establish that ACHD's 2014 civil action addresses the same emissions standards alleged by GASP in Count I of its Amended Complaint (Amended Complaint, ¶¶ 44-47).

In addition to addressing violations of the 5 percent door emissions standard alleged by GASP, the ACHD's 2014 civil action has also been diligently prosecuted.  The 2014 COA expressly states that it "is intended to address the violations alleged by [the ACHD] in the complaint filed concurrently with this Agreement" (Amended Complaint, Ex. F ¶ II.A).

To this end, the 2014 COA assessed $300,000 in civil penalties against Shenango "in full settlement of all issues and alleged violations arising under or related to those described in [the COA]," including violations of the 5 percent door emissions standard (Amended Complaint, Ex. F ¶ V.A).  The ACHD carefully considered several factors relevant to the characteristics of the violations to determine its penalty assessment, including corrective actions taken by Shenango to prevent future violations (Amended Complaint, Ex. F ¶ V.B).  As memorialized in paragraphs 18.c and 18.d of the 2014 COA, these corrective actions include implementation of a comprehensive door inspection and change-out program requiring daily inspections and prompt replacement of 1 to 2 doors per week from the battery doors, and improvement to its door jamb cleaning equipment to enhance the doors' gas sealing capabilities (Amended Complaint, Ex. F ¶¶ 18.c and 18.d).   In addition, the 2014 COA required Shenango to perform a Supplemental Environmental Project requiring an additional $300,000 in expenditures to resolve, in part, violations of the 5 percent door emissions standard (Amended Complaint, Ex. F ¶ VI.A). Finally, the ACHD expressly retains the right to enforce the terms of the 2014 COA if violated, as well as pursue any additional measures to achieve compliance with the 2014 COA.   (Amended Complaint, Ex. F ¶ II.I-J).

The imposition of penalties by the ACHD to resolve violations of an emissions standard is sufficient, but not necessary, to establish a diligent prosecution. *Hudson River*, 591 F.Supp. at 352 ("[I]mposition of fines plays an important role in enforcement . . . while payment of fines as

penance for past violations may serve valid purposes and deter further wrongdoing by present and future violators, this Court refuses to hold that severe monetary penalties are a prerequisite to a finding that agency action has represented diligent prosecution");  *see also Clean Air Council*, 2003 U.S. Dist. 5346 at *12 (indicating that imposition of stipulated penalties alone was enough to constitute a diligent prosecution).

Moreover, when a consent order also requires the defendant to incur substantial costs to comply with its terms, as here with the Supplemental Environmental Project, and jurisdiction is retained by the agency to assess additional penalties for failure to comply, as here with Paragraph II(I)-(J) of the 2014 COA, the agency's diligent prosecution cannot be reasonably questioned. *Envtl. Integrity Project*, 2007 U.S. Dist. LEXIS 1219 at *3; *see also Cmty. of Cambridge Envt'l Health & Cmty. Dev. Group v. City of Cambridge*, 115 F. Supp. 2d 550 (D. Md. 2000) ("[An agency's] discretionary decision not to impose significant monetary penalties . . . does not support a finding of lack of diligence. The [defendant] is bearing other substantial costs . . . and [the agency] has reserved the right to assess penalties in the future if necessary").  Accordingly, the substantial civil penalty of $300,000 imposed by the 2014 COA, combined with Shenango's corrective actions acknowledged therein, the $300,000 in additional expenditures for the Supplemental Environmental Project, and the ACHD's continued enforcement authority over the terms of the 2014 COA clearly satisfy the diligent prosecution standard of Section 304(b)(1)(B) of the CAA.

GASP's Amended Complaint does not allege any facts that suggest dilatory, collusive or bad faith conduct on the part of the ACHD, which are necessary to overcome the heavy presumption of diligent prosecution.  This is because facts do not exist to support any such allegations.  The ACHD's enforcement efforts, as reflected by the 2014 COA, are plainly

diligent, particularly considering the high level of deference accorded to the agency in choosing its enforcement strategy.  Even more, these enforcement efforts and the related corrective actions taken by Shenango have addressed concerns regarding ongoing compliance with the 5 percent door emissions standard.

Assessing the likelihood that violations of the 5 percent door emissions standard will reoccur is not difficult to determine because of the high frequency of third-party inspections that are conducted at Shenango's S-1 coke battery.  Third-party inspectors are present at the facility on a daily basis under an EPA contract that is managed by the ACHD (Ex. 4 ¶ 5).  These trained inspectors conduct daily inspections of battery doors specifically to determine the compliance status of the battery with the 5 percent door emissions standard (Ex. 4 ¶ 5).   Accordingly, there have been 181 tests conducted by these third-party inspectors between January 1, 2014 and June 30, 2014 (Ex. 4 ¶ 6).  In addition, ACHD inspectors have conducted an additional 92 inspections of the 5 percent door emissions standard during that same period (Ex. 4 ¶ 4).  Of the 268 total inspections in 2014, only one third party inspection, which observes both the pushing and coking sides of battery doors, and two ACHD inspections, observing one side of the battery doors,  have resulted in readings of greater than 5 percent (Ex. 4 ¶ 6).  This nearly 99% overall compliance rate clearly demonstrates that compliance with the applicable performance standard is not an ongoing issue, as recognized by the ACHD (Ex. 4 ¶ 6).

Thus, the ACHD's enforcement efforts, through its penalty assessment and inducement of corrective action, have culminated in bringing Shenango into compliance with the 5 percent door emissions standard.  GASP's duplicative civil action seeks only to supplant the ACHD's continued authority in enforcing Shenango's compliance with this emissions standard and impose its own preferred penalties and relief, which would plainly interfere with the ACHD's

successful enforcement strategy.  Count I of GASP's suit, therefore, must be dismissed under Rule 12(b)(1) and Section 304(b)(1)(B) of the CAA because this Court lacks subject matter jurisdiction.

> **2.      The ACHD, DEP, and EPA's 2012 Complaint and Consent Decree constitute a diligent prosecution of the coke oven combustion stack emissions standards alleged in Count II of the Amended Complaint.**

In Count II of its Amended Complaint, GASP alleges that Shenango violated the 20 percent and 60 percent combustion stack emissions standards in Article XXI, Section 2015.21.f.3 and f.4 of the ACHD Rules and Regulations (Amended Complaint ¶¶ 48-52).  These alleged violations are already the subject of the ACHD, DEP, and EPA's 2012 civil action, culminating in the 2012 Consent Decree, which remains in full force and effect to this day and continues to be diligently prosecuted.

The 2012 Consent Decree not only seeks compliance with the same combustion stack opacity standards alleged by GASP, but also expressly requires compliance with such standards. Further, the 2012 Consent Decree specified detailed operating and maintenance protocols and monitoring requirements to be implemented by Shenango with the goal of addressing exceedances and bringing the Facility into compliance.  Thus, the ACHD, DEP, and EPA have prosecuted and continue to diligently prosecute their action addressing the same standards in Count II of GASP's Amended Complaint.

As established above, in determining whether the scope of an agency's civil action encompasses the standards at issue in the citizen suit's complaint, the court must examine the agency's complaint, consent decree, or consent order in comparison with the plaintiff's complaint.  *Dodge*, 732 F.Supp.2d at 587.  In the sixth claim for relief of the 2012 Complaint, the ACHD, DEP, and EPA alleged that Shenango "has violated and continues to violate Allegheny

County Rules and Regulations Article XXI . . . Section 2105.21[.]f.3 and f.4 . . ." (Ex. 2 ¶ 93). Furthermore, the 2012 Consent Decree states that it "resolves…the violations alleged in the Complaint filed in this action . . ." (Ex. 1 ¶ XVI.A).  These excerpts from the 2012 Complaint and Consent Decree establish that the agencies' 2012 civil action addresses the same 20 percent and 60 percent combustion stack emissions standards alleged in GASP's Amended Complaint.

Moreover, the 2012 Consent Decree reflects a continuing diligent prosecution by EPA, DEP and the ACHD.  Under the 2012 Consent Decree, Shenango was required to pay a civil penalty of $1.75  million "in full and complete settlement of all claims" covered by the complaint, including violations of the 20 percent and 60 percent combustion stack opacity emission standards (Ex. 1 ¶ VII.A).  In addition, although not necessary to establish diligence, the 2012 Consent Decree expressly requires Shenango to "operate the Facility in compliance with . . . Sections 2105.21f.3 and f.4 of the Rules and Regulations of the ACHD pertaining to coke oven emissions from combustion stacks . . ." (Ex. 1 ¶ IV.A.1).  For each hour of non-compliance with these emissions standards, the 2012 Consent Decree specifies a schedule of stipulated penalties (Ex. 1 ¶ VIII.A.2).  Pursuant to this schedule, on April 8, 2014, ACHD, DEP and EPA issued a demand for nearly $150,000 in stipulated penalties (Ex. 3).  In addition, on July 3, 2014, ACHD, DEP and EPA issued another stipulated demand for over $28,000 (Ex. 3). These demands were issued "due to Shenango's failure to comply with visible emission limits set forth in Paragraphs IV.A.1.a-c [corresponding with combustion stack opacity standards] from the date of Entry of the Consent Decree."  *Id*.  These enforcement efforts undoubtedly demonstrate that ACHD and EPA continue to diligently prosecute the terms of the 2012 Consent Decree.

In addition, under the 2012 Consent Decree, the ACHD, DEP and EPA expressly retain the right to pursue any additional remedies in addition to the imposition of stipulated penalties to

enforce the terms of the 2012 Consent Decree if violated (Ex. 1 ¶ VIII.B.2), as well as the right to take action "to seek civil penalties or injunctive relief from [Shenango] for any statutory or regulatory violations which occur between the date of lodging of [the 2012 Consent Decree] and termination of [the 2012 Consent Decree]" (Ex. 1 ¶ XVI.B.2). The 2012 Consent Decree only terminates upon motion by Shenango when "Defendant can demonstrate it has complied with the [20% and 60% combustion stack opacity standard] requirements in Paragraph IV.A.1 of this Decree…" (Ex. 1 ¶ XXI.B.1.a). Since Shenango has not made any such motion to date, the 2012 Consent Decree not only remains effective, but also clearly envisions and retains continued enforcement authority in the event of exceedances occurring after its entry.

Finally, the 2012 Consent Decree requires Shenango to implement several specific measures on an ongoing basis with the long-term goal of improving compliance. For instance, Shenango must implement detailed Battery Heating and Elevated Opacity Response Protocols, which require monitoring and correlation of opacity data to determine instances of leakage within a particular coke oven location (Ex. 1 Appendices 2 and 3). Based on these data, Shenango is required to implement a comprehensive Coke Oven Proactive Maintenance Program by continuously performing significant repairs involving ceramic welding of cracks in oven walls and other areas that allow for leakage and potential exceedance of the opacity standard (Ex. 1 Appendix 4). Failure to abide by these Protocols subjects Shenango to the imposition of additional stipulated penalties. Since execution of the 2012 Consent Decree, Shenango has been involved in the process of identifying and correcting problem areas within oven walls. However, as envisioned by the 2012 Consent Decree, such corrective actions are part of a dynamic, long-term process that requires periodic repair of latent cracks that develop during day-to-day

operation (Ex. 4 ¶ 9).   The ongoing corrective actions that Shenango is required to take are products of a diligent enforcement by the ACHD, DEP, and EPA.

The facts in this case regarding the combustion stack opacity emissions standards are very similar to those involved in *Clean Air Council*, *supra*.  There, the Delaware Department of Natural Resources and Environmental Control initiated a civil action against a refinery alleging violations of a CAA emissions standard.  The action was resolved through a settlement which provided for an open-ended compliance period pending implementation of an action and monitoring plan, subject to stipulated penalties.  *Clean Air Council*, 2003 U.S. Dist. LEXIS 5346 at **15-17.  The court held that such efforts constituted a diligent prosecution, and granted the defendant's motion to dismiss the citizen suit.  *Id.* at *18.  Accordingly, such a complex and ongoing enforcement by the ACHD, DEP, and EPA is precisely the type of effort intended to be protected by CAA Section 304 (b)(1)(B) and should not be disturbed by GASP's duplicative citizen suit.

In light of the substantial $1.75 million civil penalty, stipulated penalties, and long-term corrective actions mandated by the 2012 Consent Decree, it is clear that the 20 percent and 60 percent combustion stack opacity standards at issue are the subject of two civil actions that have been and continue to be diligently prosecuted.  Count II of GASP's Amended Complaint is merely an attempt to supplant the discretion of the ACHD, DEP, and EPA in employing its designed strategy in bringing Shenango in compliance with these standards.  Therefore, Count II is precluded under Section 304(b)(1)(B) of the CAA, and must be dismissed for lack of subject matter jurisdiction.

**B.**     **GASP's Amended Complaint must be dismissed under Rule 12(b)(6) because it fails to allege any facts suggesting that the ACHD, DEP or EPA have engaged in conduct considered dilatory, collusive, or otherwise in bad faith during its enforcement.**

As established above, there is a "heavy presumption" of diligence on the part of a government agency's enforcement efforts. *Envtl. Integrity Project*, 2007 U.S. Dist. LEXIS 1219 at *3. To overcome this strong presumption, a plaintiff must prove "that the [agency] has engaged in a pattern of conduct in its prosecution of the defendant that could be considered dilatory, collusive or otherwise in bad faith." *Id*. GASP's Amended Complaint, however, is completely devoid of any factual allegations that even suggest dilatory, collusive or bad faith conduct on the part of the ACHD, DEP, or EPA, let alone facts sufficient to meet the plausibility standard required by *Twombly* and *Iqbal*. As a result, GASP's Amended Complaint fails to state a valid claim under Section 304 of the CAA upon which relief may be granted, requiring dismissal of its suit with prejudice pursuant to Rule 12(b)(6).

## V.     <u>CONCLUSION</u>

For the reasons set forth above, GASP's Amended Complaint is clearly duplicative of the enforcement efforts reflected in the ACHD, DEP, and EPA's 2012 and 2014 civil actions, including the 2014 COA and the 2012 Consent Decree, which resulted from those enforcement actions. The ACHD, EPA and DEP have diligently prosecuted and enforce those actions and the resulting consent decrees or orders, and there are no facts to overcome the heavy presumption of diligent prosecution. Accordingly, GASP's Amended Complaint and lawsuit must be dismissed with prejudice pursuant to Rule 12(b)(1) and (b)(6) for lack of subject matter jurisdiction and failure to state a claim upon which relief may be granted.

Respectfully submitted,

BABST, CALLAND, CLEMENTS AND ZOMNIR, P.C.

Date:  7/18/2014                    By: /s/ James D. Miller
                                                  Chester R. Babst III, Esq.
                                                  Pa. ID No. 17232
                                                  James D. Miller, Esq.
                                                  Pa. ID No. 209679
                                                  Varun Shekhar, Esq.
                                                  PA ID No. 317151
                                                  Two Gateway Center, 8th Floor
                                                  Pittsburgh, PA  15222
                                                  Phone: (412) 394-5400
                                                  Fax: (412) 394-6576
                                                  cbabst@babstcalland.com
                                                  jmiller@babstcalland.com
                                                  vshekhar@babstcalland.com
                                                  *Counsel for Defendant Shenango, Incorporated*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of Defendant Shenango, Incorporated's Brief in Support of Motion to Dismiss Plaintiff's First Amended Complaint Pursuant to Rules 12(b)(1) and (b)(6) was electronically served on all parties and counsel identified below by filing with this Court's ECF System on July 18, 2014:

John K Baillie, Esq
Joseph Osborne, Esq.
Group Against Smog and Pollution, Inc.
5135 Penn Avenue
Pittsburgh, PA 15224
john@gasp-pgh.org
joe@gasp-pgh.org
*Counsel for Plaintiff, Group Against Smog and Pollution Inc.*

/s/ James D. Miller
James D. Miller